## CITY OF INDIANAPOLIS ET AL. v. CAULEY.

[No. 20,417.   Filed March 7, 1905.]

1. PLEADING.—*Complaint.*—*Municipal Corporations.*—*Bridges.*—*Negligence.*—A complaint by an employe of a street car company alleging that the defendant municipal corporation "well knowing said bridge was out of repair * * * negligently suffered the same to remain out of repair, and negligently suffered it to be used by the street car company and the public for travel," is sufficient as to the charge of negligence.   p. 306.

2. SAME.—*Complaint.*—*Master and Servant.*—*Street Railroads.*—*Bridges.*—*Negligence.*—A complaint by the servant against his master, a street railway company, alleging that such company with knowledge of the defective and dangerous condition of a bridge ordered the plaintiff to go on and over such bridge on defendant's construction car, and while crossing such bridge, without any knowledge or means of knowledge of the danger, such bridge fell and plaintiff was injured, is sufficient as to the charge of negligence.   p. 307.

3. MASTER AND SERVANT.—*Assumption of Risk.*—A servant in the construction department of defendant, a street railway, in riding on defendant's car to a point beyond a bridge on defendant's line, does not assume the risk of the defects and dangers of such bridge when he is ignorant thereof.   p. 307.

4. MUNICIPAL CORPORATIONS.—*Bridge.*—*Negligence in Selection of Engineers.*—A municipal corporation that negligently selects engineers to conduct the repairs on a defective and dangerous bridge, and by reason of the incompetency of such engineers such bridge is partially opened for travel, while dangerous, is liable to a person riding on a street car and who was injured by reason of such defective bridge.   p. 308.

5. STREET RAILROADS.—*Bridges.*—*Negligence.*—A street railroad company using a bridge belonging to the municipality and violating the orders of the city by running more than one loaded car over such bridge at the same time, by reason of which, injury was inflicted upon the plaintiff who was riding on defendant's car, is liable.   p. 309.

6. MUNICIPAL CORPORATIONS.—*Engineers.*—*Selection of.*—*Negligence.*—A municipal corporation is liable for the negligence of its negligently selected and incompetent engineers.   p. 309.

7. SAME.—*Selection of Engineers.*—*Care Required.*—It is not sufficient for a municipal corporation in the selection of engineers to examine and determine the condition of a bridge of great magnitude, to select civil engineers of good repute and creditable employment, but

City of Indianapolis *v.* Cauley.

it must show that they were able for the task, considering the nature and difficulty thereof.  p. 310.

8.  TRIAL.—*Instructions.—Burden.*—An instruction that the plaintiff must establish by a fair preponderance of the evidence that he received the injuries "as charged in the complaint" is not misleading since the jury must be presumed to understand that such injuries were charged to have been negligently caused.  p. 311.

9.  SAME.—*Instructions.—Contributory Negligence.—Burden.*—An instruction that the burden is upon defendants to show that plaintiff was guilty of contributory negligence, and that defendants must prove that fact by a fair preponderance is erroneous.  p. 311.

10.  SAME.—*Instructions.—When Harmless Error.*—An erroneous instruction on the law of contributory negligence is harmless when there was no such question in the case and no evidence by either party on the point.  p. 312.

11.  STREET RAILROADS.—*Use of Public Bridge.—Danger.—Liability.*—A street railway that runs its cars over a bridge which is part of the public highway is liable to an employe riding on its car when the company knows of the dangerous character of such bridge and the employe does not.  p. 313.

12.  TRIAL.—*Instructions.—Applicability.*—An instruction not applicable to the evidence should not be given.  p. 313.

13.  STREET RAILROADS.—*Public Bridges.—Use of.—Liability.*—A street railroad company using a public bridge thereby adopts such bridge as one of its appliances and if it knew or by ordinary care should have known of the dangerous condition of such bridge, it is liable to an employe injured by reason of such dangers who does not know and by ordinary care could not know of the dangerous character thereof.  p. 313.

From Superior Court of Marion County (63,669); *James M. Leathers,* Judge.

Action by William Cauley against the City of Indianapolis and the Indianapolis Street Railway Company. From a judgment rendered on a verdict for $2,500, defendants appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Henry Warrum, Linn D. Hay, F. Winter* and *W. H. Latta,* for appellants.

*Geo. W. Galvin* and *Daly & Raub,* for appellee.

Vol. 164—20

HADLEY, C. J.—Action by William Cauley, appellee, against the city of Indianapolis and the Indianapolis Street Railway Company, appellants, to recover damages for personal injuries received by reason of the fall of the West Washington street bridge over White river, alleged to have been caused by the negligence of appellants. As against Indianapolis, appellee charges that the city negligently permitted said bridge to become out of repair and dangerous for traffic, and, with knowledge, negligently suffered it to be and remain out of repair, and to be used by the public as a thoroughfare for traffic. As to the railway company, it is charged that the company, well knowing the bridge was out of repair and dangerous to travel, negligently permitted its cars to run over, and negligently carried its unknowing passengers and employes over, said bridge while in such dangerous condition, with full knowledge that the same was liable to fall and precipitate its passengers and employes into the river. A separate demurrer by each of the defendants for insufficiency of facts was overruled. Each of the defendants answered by general denial. Verdict and judgment for appellee against both appellants. Separate assignments question the action of the court in overruling the demurrers to the complaint, in overruling separate motions for judgment on answers to interrogatories, notwithstanding the general verdict, and in overruling like motions for a new trial.

1. The chief assault upon the complaint by the city is that it does not sufficiently charge negligence, or show that any act of that defendant was the proximate cause of the plaintiff's injuries; and, by the street car company, that the complaint does not adequately negative assumption of risk. It has been many times decided in this State that in cases of this class a general charge of negligence is sufficient to withstand a demurrer. Here it is charged that the city negligently permitted the bridge to get out of repair and dangerous for traffic, and, "well knowing said bridge was

out of repair and dangerous for traffic, negligently suffered the same to remain out of repair, and negligently suffered it to be used by the street car company and the public for travel." These allegations are clearly sufficient under the rule. If, before answering, this defendant had desired, and was entitled to, more definite and specific information concerning the want of repair, and elements of danger existing and continuing in the bridge with such city's knowledge, it had an ample remedy by motion to have secured such information.

2. It is charged that the plaintiff was an employe of the street car company, as a member of its track-repairing force, and was by the company ordered to take passage on its construction car to be carried over the bridge to his work on the other side of the river, the company at the time well knowing that the bridge was out of repair and dangerous, and liable to give way and precipitate those traveling upon it into the river. The plaintiff at the time having no knowledge, nor means of knowledge, of the defective and dangerous condition of the bridge, took passage upon said construction car, and was by the company negligently carried upon and along said defective bridge, and "while said car was so passing over said bridge, by reason of the defects in the bridge, and its insecure and unsafe condition, it gave way and fell, and the construction car, with the plaintiff and other employes of said defendant, were precipitated into the river, and the plaintiff thereby injured," etc. Under these averments the falling of the bridge was the result of the city's wrongful failure to repair, and the falling the direct and proximate cause of the plaintiff's injuries.

3. Neither can we sustain the street car company's contention that the complaint fails to show affirmatively that the plaintiff did not assume the risk. It makes no difference that the plaintiff was an employe, and not a passenger. He was in the car rightfully, and by command of the company. He had no knowledge, nor means of knowledge, of the de-

fective and dangerous condition of the bridge, and, in the absence of opportunity or means of information, it can not be said that the plaintiff assumed an extraordinary risk that was wholly unknown to him. We find no infirmity in the complaint as to either of the apellants, and the demurrers thereto were properly overruled.

4.   Were the motions of appellants for judgment on answers to interrogatories correctly overruled? In effect, the jury found by their general verdict that the plaintiff's injuries were caused, directly and proximately, by the negligence of appellants in the manner as alleged in the complaint. The jury's special findings as relating to the city are to the effect that the board of public works had, and have, full control and authority over all the bridges of the city, including the one in question. Shortly prior to plaintiff's accident the board caused the bridge to be inspected by the city civil engineer, and a civil engineer in the employ of the street car company, which inspection disclosed an unsound and unsafe condition. Upon such disclosure the board immediately closed the bridge to all traffic, except one empty street car at a time, and proceeded at once to repair in accordance with the recommendations of the inspecting engineers. The bridge fell and caused the plaintiff's injuries about 2 o'clock p. m. of the day upon which it was opened for traffic after being repaired. The board of public works believed the inspectors selected by them were competent, but they did not exercise reasonable care in selecting men capable and qualified to inspect, and to determine and conduct repairs, and did select engineers who were incompetent either to ascertain the condition of the bridge, or to determine and conduct necessary repairs. The board had no reason to believe that the persons selected by them were competent to inspect and repair this kind of a bridge. The defects that caused the fall of the bridge were not discernable by ordinary inspection. The engineers and workmen who repaired the bridge were not skilled, and the

City of Indianapolis *v.* Cauley.

repairs were made in an unskillful and unworkmanlike manner, and the board of public works, after the repairs were completed, knew that defects in the bridge still existed, and knew at the time of the accident that the bridge was unsafe for ordinary traffic.

5.    With respect to the street car company, it is found that on the day of the accident the company was restricted in the use of the bridge to the passage of one loaded car at a time, and, in violation of the restriction, the company was at the time drawing over it more than one loaded car.    The company knew at the time of the accident, and before, and after the completion of repairs, that using the bridge as it was being used by it at the time of the plaintiff's injury was dangerous.    The plaintiff and other employes of the company loaded the cars upon which plaintiff was riding, when hurt, with ordinary and usual loads, and it was the loaded cars and weak condition of the bridge that caused it to fall.

6.    Counsel for the city argue that, as the city was bound to use only ordinary care in the inspection and repair of its bridges, the selection made by it of two reputable civil engineers, and the making of repairs in conformity with their recommendations, was the full limit of the city's legal duty.    In disposing of this contention, we find it unnecessary to resort to inference in support of the general verdict, as would be required of us in case of doubt or uncertainty, for it is plainly obvious that the special findings themselves furnish a complete answer.    It is expressly found that the city did not exercise reasonable care in the selection of engineers who were competent and qualified to inspect and repair the bridge, and, without having any fact or reason to lead a prudent person to believe them competent, actually selected engineers that were incompetent both to inspect and to conduct repairs to a bridge of this class.

It is a legal duty of a municipality to exercise such supervision over the bridges under its control, and to make such

inspection from time to time, as ordinary care and diligence require. The same reasonable care also extends to the selection of persons skilled and competent, not only to make the inspection, but to determine whether repairs are necessary, and, if so, the kind. And in this case, if the city knowingly, or through the culpable negligence of its officers, employed incompetent persons, it is liable in damages for special injuries occasioned thereby. *Board, etc.,* v. *Pearson* (1889), 120 Ind. 426, 429, 16 Am. St. 325; Elliott, Roads and Sts. (2d ed.), §64.

7. Furthermore, in the selection of inspectors, the diligence required of the board of public works, to be accounted reasonable, must be measured by the known importance and difficulty of the work to be performed—that is, such degree of care as men of ordinary prudence would observe in like undertakings. In all cases the act of selecting such experts should be accompanied with due inquiry and reasonable grounds to believe that the person chosen was qualified for the task. When it comes to the selection of a skilled man to inquire into and determine the true condition of a bridge of great magnitude—more than four hundred feet in length—and of questionable safety, over which heavily loaded cars, vehicles of every description, and thousands of people pass every day, the law is not satisfied with the finding of a professional civil engineer of good repute and creditable employment. Berofe it can be said that the board of public works was justified in the appointments made by it, it must appear that they not only believed their appointees were competent, but they must be able to show that they had good grounds for entertaining such belief. Neither diligence nor justifiable reason is shown by the record in the selections made. Besides, it is specially found that both appellants knew at the time of the accident that the bridge was dangerous to travel, and unsafe for the use to which it was at the time being put by the street car company. This finding of itself imports negligence in both.

The findings of the jury are not repugnant to the general verdict, and appellants' motions for judgment on answers to interrogatories were correctly overruled.

8.    The city complains of certain instructions given by the court.  By number four the court directed the jury, in substance, that, before the plaintiff could recover, he must establish by a fair preponderance of the evidence that he had received the injuries, or some part thereof, as charged in the complaint, and that the negligence charged was the proximate cause of such injuries.  The effect of the instruction is that, before the plaintiff can recover, he must prove by a preponderance of the evidence that he recived his injuries "as charged in the complaint"—that is, by the negligence of the defendants as therein alleged—and that such injuries were the direct and proximate result of the negligent acts charged.  The instruction is not fairly subject to the criticism that it was calculated to lead the jury to believe that the preponderance of the evidence required related only to the injuries, and not to the negligence of the defendants. We think it could not have misled the jury.

9.    Instruction five and one-half was in these words: "If you believe from the evidence that the negligence, if any there was, on the part of the plaintiff contributed to the injuries complained of, I instruct you that he can not recover; but the burden of proof is upon the defendants to show that plaintiff was guilty of such contributory negligence, if any there was, and the defendants must prove that fact by a fair preponderance of the evidence."  Contributory fault, like any other fact that must be affirmatively shown, is to be considered established when it is found to be sustained by a preponderance of all the evidence in the case, without reference to whether it was produced by one party or the other. The instruction quoted is equivalent to telling the jury that it must not charge the plaintiff with fault unless the defendants have proved the fact by a preponderance, thus depriving the defendants of the benefit of any evidence that may

have been disclosed by the plaintiff and his witnesses. For this reason the instruction was erroneous. *Indianapolis St. R. Co.* v. *Taylor* (1902), 158 Ind. 274; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Pittsburgh, etc., R. Co.* v. *Collins* (1904), 163 Ind. 569.

10. Being erroneous, it must be held sufficient to sustain the appeal, unless it clearly appears from the whole record that it was harmless. If it turns out that there was no question of contributory negligence in the case, and no evidence by either party upon the point, it can not be said to have harmed the defendants. There is not a syllable or item of evidence pointed out as appearing in the case, either direct or indirect, that tends to establish such negligence. The sum total of the evidence relating to the plaintiff's knowledge, or means of knowledge, of the condition of the bridge, is this: He had been in the employ of the street car company for about one year as a track repairer; had worked over all parts of the system; it was no part of his duty to inspect the track or bridges; he was a pick and shovel man; had never worked on or about the bridge; had, without incident, ridden over the bridge on loaded and unloaded cars frequently before the bridge was closed for repairs; he knew the bridge was being repaired, and learned on the evening of January 15, that it was to be opened to traffic on the following day; he assisted other employes in loading with cinders the cars that fell through the bridge; they put on usual and ordinary loads, and, in obedience to the company's orders, he got upon the train, composed of two cinder-loaded cars and a motor car, which was the usual and common train before the bridge was repaired, and suffered himself to be carried onto the bridge with no greater belief or fear that the bridge would break than that the chair upon which he sat testifying would break under him. There is in this evidence nothing to indicate fault in the plaintiff in permitting himself to be carried upon the bridge, and no fact or circumstance disclosed from which

the jury might reasonably infer negligence. Contributory negligence could not have been found by the jury without some evidence, and, there being none in the case, the defendants were not entitled to the benefits of such finding, and therefore not injured by the instruction. *Indianapolis, etc., Transit Co.* v. *Haines* (1904), 33 Ind. App. 63.

The city also complains of the giving of instructions numbered eight and nine, which, as we think, clearly and correctly state the law relating to the duty of cities in respect to the inspection and repair of bridges. The general rules heretofore stated in considering the motion for judgment *non obstante* fully sustain these two instructions.

11. The street railway company submits, without argument, that the court erred in refusing to give to the jury its requests numbered three, five and six, and by giving of the court's own motion instructions eleven, twelve and thirteen. Number three is to the effect that a street railroad company does not owe to its employes the duty of making the bridges on the highway safe, and is not liable for injuries suffered by such employes, not caused by the negligent act of the employer. So far as this proposal is pertinent to the evidence, it was fully covered by instructions given by the court. Moreover, if it be true, as submitted, that a corporation is under no legal duty to go in advance of its employe traveling on a highway over which it has no control, and inspect and make safe the road and bridges, yet we know of no law that gives a corporation the right knowingly and recklessly to carry its uninformed employes into a place of imminent danger.

12. Number five states the effect of equal knowledge, and number six the law of fellow servants. Neither of these was applicable to any evidence in the case, and both were properly refused.

13. Number eleven, given by the court, advised the jury that a street car company, when using a city bridge for its tracks, thereby adopts such bridge as one of its appliances,

and if such company knows, or by the exercise of reasonable care could know, that such bridge is in a defective and unsafe condition, and liable to give way and fall by reason of such condition, and knowingly causes or permits its cars to be run over such bridge, and the bridge gives way and falls because of said defective condition, while cars of such company are in the act of crossing, and its employes in charge of the cars, or upon them in the line of their employment, are, without negligence on their part, injured in the fall of such cars, such employes would be entitled to recover for injuries so received; but if such employe knew, or could have known by the exercise of ordinary care and diligence, that such bridge was out of repair and unsafe, and liable to fall because of such condition, and with such knowledge, or means of knowledge, operated and ran, or rode upon, cars onto the bridge, and, while attempting so to cross, the bridge broke and fell by reason of its said defective condition, such employes must be held to have assumed the risk, and can not recover for injuries received by the fall.

In number twelve, the court applied the general principles announced in number eleven to the facts of this case, upon the hypothesis that the evidence established guilty knowledge in the company, and the absence of fault in the plaintiff, and in number thirteen applied the same upon the hypothesis that the evidence established knowledge and assumption of risk in the plaintiff.

We perceive nothing erroneous in any of the three last-mentioned instructions.

The verdict was sustained by the evidence. We find no error. Judgment affirmed.